TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00641-CR






Daniel Camarillo Garcia, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. B-96-0839-S, HONORABLE JOHN E. SUTTON, JUDGE PRESIDING







A jury found appellant Daniel Camarillo Garcia guilty of driving while intoxicated,
third offense, and assessed punishment at imprisonment for ten years. Tex. Penal Code Ann.
§§ 49.04(a), 49.09(b) (West Supp. 1998). Appellant contends that he was forced to waive his
right to remain silent and otherwise denied a fair trial because of statements made by the court. 
We find these contentions to be unsupported by the record.

Following the lunch recess on the first day of testimony (the second day of trial),
and before the jury was returned to the courtroom, the court told appellant, "Mr. Garcia, you get
found guilty in this case, I would thoroughly expect that this Jury will absolutely max you out. 
With all your priors being felonies . . . what you have been sentenced to before. I thoroughly
expect them to max you out, particularly because they are irritated. You can see the irritation on
their face yesterday afternoon [during voir dire]." Defense counsel was not present when the
court made this statement, but the court repeated his comment when counsel returned. The court
went on to criticize defense counsel's cross-examination of the State's witnesses and said he had
seen jurors "rolling their eyes at this." The court also remarked, "[T]he Defense thinks you try
a case by asking hours after hours of useless questions, which is what I feel like I have heard so
far." The court then rebuked defense counsel for the second time regarding what the court
believed was improper and unduly time-consuming questioning during voir dire. (1) The court
concluded, "[E]ither you are the most brilliant attorney in ten years in my courtroom or you are
not. And we can all have our own opinion of that one." With that, the jury was brought in and
trial resumed.

The next morning, before the charge was read to the jury, defense counsel moved
for a mistrial on the ground that "the trial Judge had an ex parte conversation with the Defendant,
in the courtroom, outside of my presence, wherein it's my understanding that the Court advised
my client that his attorney had asked useless questions on cross-examination, that I had alienated
the Jury, and that I had caused an undue delay in this case." The court acknowledged making the
described statements, and noted that it repeated them in counsel's presence. The court added that
counsel had been tardy in returning from lunch. Then, observing that the jury had not heard the
challenged comments, the court asked counsel to explain how appellant had been harmed. Counsel
replied, "The only harm, Your Honor, is the fact that a statement was made by the trial Judge in
this case about the effectiveness of Counsel." The court overruled the motion for mistrial after
reiterating its previous criticisms of counsel's performance. The court added, "[I]n this county
the Judges do take control of the courtroom. . . . I work under the premise that sometimes the
only way we can get lawyers to start doing things right all the time is that they have to pay a price
when they do it wrong."

Appellant first argues that the court's "action in criticizing Appellant's counsel and
predicting a maximum sentence prior to the close of [the State's] case was so extreme as to lead
a reasonable person on trial to believe he must testify to try to help his own case, and such action
was therefore an indirect coercion of testimony in violation of Appellant's right to remain silent." 
Regardless of the injudicious nature of the court's remarks, the record reflects that defense counsel
advised the court before testimony began and in the jury's presence that appellant intended to
testify. Appellant acknowledges this, but says he might have changed his mind and not testified
had the court not made the critical comments regarding counsel. While anything is possible, the
record shows that appellant intended to testify from the beginning of trial and there is no evidence
that appellant ever considered doing otherwise. The record simply does not support appellant's
claim that the court's remarks forced him to testify. The first point of error is overruled.

Appellant elected before trial to have the jury assess punishment, but retained the
right to change this election with the State's permission after the finding of guilt. See Tex. Code
Crim. Proc. Ann. art. 37.07, § 2(b) (West Supp. 1998). In his second point of error, appellant
argues, "[P]unishment was a matter which could still come before the trial judge at the time when
his comments were made. Although none of the comments directly indicated what result the trial
court would reach, they were delivered in such a manner . . . as to suggest animosity on the part
of the trial court. This had a chilling effect on Appellant's free choice to seek withdrawal of his
election." Our reading of the record leads us to believe that any animosity displayed by the
district court was directed toward counsel, not appellant himself. But in any case, there is no
suggestion in the record that appellant ever considered or would have considered changing his
punishment election.

Appellant further complains that the district court violated canons two (avoiding
appearance of impropriety) and three (performing judicial duties impartially) of the Texas Code
of Judicial Conduct. He argues, "[W]hen a judge takes it upon himself to publicly humiliate a
lawyer in the context of a judicial proceeding . . . those principles [of fair play and substantial
justice] are offended deeply, and the guarantee of due process is violated. Judicial conduct such
as this taints the entire proceeding, not just one articulable point, and casts a pall on the judicial
process."

This Court may reverse a criminal conviction only upon a showing of constitutional
error that may have contributed to the conviction or punishment, or some other error that affected
a substantial right of the defendant. See Tex. R. App. P. 44.2. Appellant has made no such
showing. Whatever this Court may think of the district court's handling of appellant's trial, and
in particular of the court's statements to and about defense counsel, we cannot say that the court
committed reversible error. Point of error two is overruled.

The judgment of conviction is affirmed.



 

 Bea Ann Smith, Justice


Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: November 19, 1998

Do Not Publish

1. The day before, while the jury panel was not present, the court admonished counsel to
discontinue voir dire questioning designed to elicit "unsworn testimony" from panel members. 


n it's my understanding that the Court advised
my client that his attorney had asked useless questions on cross-examination, that I had alienated
the Jury, and that I had caused an undue delay in this case." The court acknowledged making the
described statements, and noted that it repeated them in counsel's presence. The court added that
counsel had been tardy in returning from lunch. Then, observing that the jury had not heard the
challenged comments, the court asked counsel to explain how appellant had been harmed. Counsel
replied, "The only harm, Your Honor, is the fact that a statement was made by the trial Judge in
this case about the effectiveness of Counsel." The court overruled the motion for mistrial after
reiterating its previous criticisms of counsel's performance. The court added, "[I]n this county
the Judges do take control of the courtroom. . . . I work under the premise that sometimes the
only way we can get lawyers to start doing things right all the time is that they have to pay a price
when they do it wrong."

Appellant first argues that the court's "action in criticizing Appellant's counsel and
predicting a maximum sentence prior to the close of [the State's] case was so extreme as to lead
a reasonable person on trial to believe he must testify to try to help his own case, and such action
was therefore an indirect coercion of testimony in violation of Appellant's right to remain silent." 
Regardless of the injudicio